## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOSEPH LOUIS HALL,                    *

Petitioner                            *

v.                                    *          Civil Action No. JRR-23-1172

C. CARTER, *Warden, FCI-Cumberland, et al.,* *
Chase
                                      *

Respondents
                                    ***

## MEMORANDUM OPINION

    The court has before it Petitioner Joseph Louis Hall's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2241 (ECF No. 1, the "Petition") in which Petitioner Hall alleges that the Federal Bureau of Prisons ("BOP") has improperly denied him access to the process afforded by the Interstate Agreement on Detainers Act ("IADA") related to a detainer lodged against him by the Commonwealth of Virginia in connection with an alleged violation of probation.  In response, Respondent Carter[1] argues the Petition should be dismissed because Hall failed to exhaust his administrative remedies and is not otherwise entitled to relief.  ECF 6.  Hall filed a reply. ECF 7.  The court has considered all papers and no hearing is needed. Local Rule 105.6 (D. Md. 2023).

## I.      Background

    Hall, who is serving a term of 180 months in the BOP and currently confined at the Federal Correctional Institution ("FCI")-Cumberland, asserts he has an active detainer lodged against him by the Commonwealth of Virginia for a probation violation. ECF 1 at 7.[2]  He claims that he has

---

[1] Hall names Warden Carter, Stafford County Circuit Court, and Virginia Department of Corrections as Respondents. ECF 1.  The only proper Respondent to this Petition is his current custodian, Warden Carter. *Rumsfeld v. Padilla,* 542 U.S. 426, 438 (2004).

[2] Page numbers reference the page numbers assigned by the court's electronic docket.

filed motions in Stafford County, Virginia, for a probation revocation hearing to no avail.  *Id*.  He asks that his probation be run concurrent with his federal sentence, or that the court issue an order compelling "the Stafford County Virginia Court and/or the Virginia Dept. of Corrections together provide the Defendant with a[] revocation hearing or terminate his probation." *Id*. Hall explains that he was not able to pursue administrative remedies at the BOP because he was told he had to handle the matter on his own (ECF 1 at 6; ECF 7 at 2) but when he requested an initial grievance form from his unit manager, the unit manager refused to furnish him the form. ECF 7 at 2.

Respondent explains that, on November 17, 2015, the Stafford County Circuit Court of the Commonwealth of Virginia issued a warrant against Hall for violation of probation. ECF No. 6-1, ¶ 5; ECF No. 6-1 at 10 (Capias to Show Cause).  Thereafter, the Stafford County Sheriff's Office sent FCI Cumberland a letter attaching the warrant and requesting that the letter be accepted as a detainer. *Id*.; ECF No. 6-1 at 9.  Respondent asserts that the Petition should be dismissed because Hall failed to exhaust his administrative remedies and Hall's detainer is not one to which the IADA process applies.  ECF 6.

## II.     Analysis

### A.  Exhaustion of Administrative Remedies

If Petitioner's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "'prisoner' means any person incarcerated or detained in any

facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h); *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Although administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on a prisoner petitioner,[3] a claim that has not been administratively exhausted may not be considered by this court. *Jones*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")). Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper

---

[3] Failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by respondents. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).

The BOP has established an Administrative Remedy Program for inmates to resolve concerns related to their confinement. 28 C.F.R. § 542.10, *et seq*. Inmates must first attempt informal resolution with staff. 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to his formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate form. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *Id.* An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. *Id.*

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, 578 U.S. 632, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." Specifically, the Court rejected a "special circumstances" exception to the exhaustion requirement, but reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 635-36. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725, *see also Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) (holding that plaintiff did not fail to exhaust administrative remedies where none was available to him due to ongoing IID

investigation).  Hall contends that the administrative process was not available to him because staff would not provide him the proper forms to initiate the administrative process.  The court cannot conclude on the record before it that the administrative process was properly available to Petitioner Hall. Therefore, the court declines to dismiss the Petition on these grounds and will address the merits of the Petition.

### B.  IADA

The IADA is an agreement among 48 states, the District of Columbia, and the United States that "creates uniform procedures for lodging and executing a detainer." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).  "The Agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const. art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash*, 473 U.S. 716, 719 (1985), citing *Cuyler v. Adams*, 449 U.S. 433, 438-442 (1981).  "Art. III of the Agreement establishes a procedure by which a prisoner incarcerated in one party State (the sending State) may demand the speedy disposition of "any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner" by another party State (the receiving State). *Carchman*, 473 U.S. at 720–21.

The *Carchman* Court explained:

> Art. III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based.[4]  If the prisoner makes such a request, the warden must forward it, together with a certificate providing certain information about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State. The authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect.

***

A probation-violation charge, which does not accuse an individual with having

---

4 Article III of the IADA uses the phrase "untried indictment, information or complaint."

5

committed a criminal offense in the sense of initiating a prosecution, thus does not
come within the terms of Art. III.  Although the probation-violation charge might
be based on the commission of a criminal offense, it does not result in the
probationer's being "prosecuted" or "brought to trial" for that offense. Indeed, in
the context of the Agreement, the probation-violation charge generally will be
based on the criminal offense for which the probationer already was tried and
convicted and is serving his sentence in the sending State.

*Id*. at 721, 725.

There is no dispute among the parties that the detainer lodged against Hall is a violation of

probation detainer rather than a new criminal charge.  Therefore, it is not a detainer subject to the

IADA.[5]  Hall counters that his right to due process has been violated because he has not had a

hearing on the state violation of probation in the more than 8 years the detainer has been pending.

ECF 7 at 3.  The court appreciates Hall's frustration with the duration of his detainer; that said, it

has no bearing on whether the IADA applies to Hall's detainer.  *Carchman*, 473 U.S. 716, 719,

*supra*.   Further, Hall is not entitled to a prompt hearing, or the equivalent of a speedy trial, on the

probation violation.  *Betterman v. Montana*, 578 U.S. 437, 439 (2016) (holding that "the guarantee

[to a speedy trial] protects the accused from arrest or indictment through trial, but does not apply

once a defendant has been found guilty at trial or has pleaded guilty to criminal charges.");

*Feather-Gorbey v. Warden*, Civil Action No. RDB-18-1602, 2018 WL 5809673 at *4 (D. Md.

Nov. 6, 2018) (holding that "[a] violation of probation, like a violation of parole, is a case wherein

the criminal defendant has already been tried and found guilty of the underlying criminal charges

and the issue to be determined is whether the probationary requirements have been abridged.")

Finally, Hall's request that the BOP run his state probation concurrent to his federal

---

[5] To the extent that Hall claims Virginia has violated its laws through the issuance of the detainer, his challenge to the
validity of that order must be litigated in the Virginia court.  This court does not have jurisdiction to consider an
alleged violation of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that "it is not the province
of a federal habeas corpus court to reexamine state court determinations on state law questions"); *see also Gurley v.
Superior Ct. of Mecklenburg Cnty*., 411 F.2d 586, 587 (4th Cir. 1969) (providing that federal district courts do not
have mandamus jurisdiction to command a State court to entertain a motion) (codified at 28 U.S.C. §1361).

sentence is unavailing with respect to relief this court may afford.  Because the Commonwealth of Virginia has not yet imposed a disposition regarding Hall's alleged violation of probation, the BOP is without authority to run a sentence not yet imposed concurrent with an existing sentence (BOP Policy 5880.28, p. 1-31), and this court lacks authority to mandate the manner in which a state sentence is imposed.

### III.    Conclusion

For the reasons set forth herein, by separate order, the Petition is **DENIED**.

June 15, 2024

/S/

_____

Julie R. Rubin
United States District Judge